J-S01002-26
J-S01003-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: K.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1230 WDA 2025 |

Appeal from the Order Entered September 3, 2025
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000043-2025

| | | |
|---|---|---|
| IN THE INTEREST OF: G.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.H., MOTHER | : | |
| | : | |
| | : | |
| | : | No. 1231 WDA 2025 |

Appeal from the Order Entered September 3, 2025
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000042-2025

| | | |
|---|---|---|
| IN THE INTEREST OF: G.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: E.H., FATHER | : | |
| | : | |
| | : | |
| | : | No. 1232 WDA 2025 |

Appeal from the Order Entered September 3, 2025
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000042-2025

J-S01002-26
J-S01003-26

IN RE: L.H., A MINOR : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
APPEAL OF: E.H., FATHER :
:
:
:
:
:
: No. 1233 WDA 2025

Appeal from the Order Entered September 3, 2025
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000043-2025

BEFORE: BOWES, J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.: **FILED: MARCH 13, 2026**

In these consolidated cases, K.H. ("Mother") and E.H. ("Father") (collectively, "Parents") have each appealed the September 3, 2025 orders that granted petitions filed by the Allegheny County Office of Children, Youth and Families ("CYF" or "the Agency") and involuntarily terminated their parental rights to their biological daughters: G.H., born in March 2019, and L.H., born in October 2020 (collectively, "the Children").[1] We affirm.

We glean the relevant factual and procedural history of these matters from the certified record. CYF first became involved with this family in May 2023 due to concerns regarding "substance abuse, homelessness, and neglect

---

[*] Former Justice specially assigned to the Superior Court.

[1] We have consolidated these cases *sua sponte* as Parents raise similar claims concerning the same factual and procedural events. **See** Pa.R.A.P. 513.

- 2 -

of the [C]hildren."[2]  Orphans' Court Opinion, 10/28/25, at 2.  Parents each have a history of opiate abuse and reported being in medication-assisted treatment.  *Id.* at 3.  The referral also indicated that Parents were not ensuring that G.H. received prompt medical care for an ophthalmological issue that required surgical intervention.[3]  *See* N.T., 8/28/25, at 23-24.  CYF caseworker Mallory Conti was assigned to the matter beginning in May 2023.  Between May 2023 and July 2023, the Agency unsuccessfully sought to engage Parents with services and conduct unannounced home visits at the family's residence.

On July 28, 2023, the court placed the Children in the emergency custody of CYF.  At the time of removal, G.H., was four years old and L.H. was two years old.  The Children were initially placed into kinship care with their paternal grandparents ("Paternal Grandparents").  On September 6, 2023, the juvenile court adjudicated the Children dependent and established their permanency goal as reunification with Parents.  In furtherance thereof, Parents were each ordered to, *inter alia*, continue with substance abuse treatment, complete evaluations through the Pennsylvania Organization for Women in Early Recovery ("POWER"), obtain and maintain appropriate housing, comply with random drug screens, and attend the Children's medical

_____

[2]  The certified record indicates that Mother has another, older child who was placed into a subsidized permanent legal custodianship for "similar issues" to those presented in these proceedings.  *See* N.T., 8/28/25, at 38.

[3]  While in the Agency's custody, G.H. underwent surgery and recovered without incident.  *See* CYF Exhibit 9 at 21.

appointments. *See id.* at 11, 14-15. Parents were afforded liberal visits with the Children, which were informally arranged and supervised by Paternal Grandparents. *See* CYF Exhibit 1 at 23 (unpaginated); N.T., 8/28/25, at 31.

Between December 2023 and March 2025, the juvenile court found that Parents' compliance with these objectives and progress towards reunification was largely minimal. *See generally* CYF Exhibit 1 (records of the Children's dependency proceedings). Despite fourteen referrals across twenty months, Parents never completed their court-ordered POWER assessments. *See* N.T., 8/28/25, at 12, 14. They each appeared for one random drug screen in September 2023, wherein they each tested positive for opiates. *See* CYF Exhibit 4 at 5; CYF Exhibit 5 at 5. Thereafter, Parents did not complete any screens, which yielded a total of approximately ninety-three "no show" or "refused" incidents between September 2023 and August 2025. *See generally* CYF Exhibits 4-5. Parents' housing also remained unstable. As of April 2025, they were reportedly "doubled up with a friend" in a living situation that "would not be safe" for the Children. N.T., 8/28/25, at 15. Parents remained in substance abuse treatment through, *inter alia*, Progressive Medical Treatment ("Progressive"). Mother's overall prognosis was identified as "poor." *See* CYF Exhibit 1 at 53. We are unable to assess Father's prognosis since he revoked his consent for Progressive to share his medical information with the Agency. *See id*. During this time period, Parents were also identified as being intermittently incarcerated in connection with criminal

charges and otherwise out of contact with the Agency for extended periods of time. *See generally id*.

Contemporaneously, the Children were removed from Paternal Grandparents' custody in November 2024. This removal occurred after the Agency learned that Parents had moved into Paternal Grandparents' home in February 2024 and had been seeing the Children "almost daily" and "unsupervised" for approximately nine months. N.T., 8/28/25, at 31-32. Following a number of temporary placements, the Children were transferred to the pre-adoptive custody of A.K. ("Foster Mother") and P.B. (collectively, "Foster Parents") in January 2025, where they have remained.

Upon the Children's removal from Paternal Grandparents' home, Parents' visits with the Children were reduced in frequency to twice per week and were supervised at the CYF offices from December 2024 until February 2025. *See id*. at 13, 34. During this time period, Parents' visits with the Children were "inconsistent" due to transportation issues. *Id*. at 29. Beginning in February 2025, however, Parent's visits were transferred to the foster care agency, Every Child, which was already overseeing Foster Parents' custody of the Children. Thereafter, Parents' visits "became very consistent." *Id*. at 29. We also note that Every Child assigned Kristi Breighner to serve as the Children's foster care caseworker. *See id*. at 41.

In March 2025, the Children underwent individual psychological assessments performed by psychologist Gregory Lobb, Ph.D. Parents failed

to appear for individual assessments with Dr. Lobb on three separate occasions. Nonetheless, he was able to conduct separate interactional evaluations of the Children with Parents and Foster Parents, respectively. **See** N.T., 9/2/25, at 69-72. Ultimately, Dr. Lobb authored two reports concerning his observations and conclusions, which were dated March 28 and July 18, 2025, respectively.

On April 15, 2025, the Agency filed petitions seeking to involuntarily terminate Parents' parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b).[4] On July 30, 2025, the juvenile court changed the Children's permanency goal to adoption. **See** N.T., 8/28/25, at 19. It is unclear from the available documentation whether Parents appealed the goal change. In connection with the entry of that order, Parents' visits with the Children were further reduced to once per week. **See id**. at 19-20.

The orphans' court held hearings on the involuntary termination petitions on August 28 and September 2, 2025, at which time G.H. was six

---

[4] Our Supreme Court has instructed this Court to engage in "limited *sua sponte* review" to ensure that children are "afforded their statutory right to legal counsel when facing the potential termination of their parent's parental rights." **In re Adoption of K.M.G.**, 240 A.3d 1218, 1238 (Pa. 2020) (citing 23 Pa.C.S. § 2313(a)). In separate orders filed on May 30, 2025, the orphans' court appointed Andrea Spurr, Esquire, to represent the Children's "legal interests" in these proceedings. Orders Appointing Legal Counsel, 5/30/25, at 1 (unpaginated). Thus, the orphans' court complied with § 2313(a), as interpreted by our Supreme Court. **See K.M.G.**, 240 A.3d 1238.

years old and L.H. was nearly five years old.[5] During the hearings, the Agency adduced testimony from Ms. Conti, Ms. Breighner, and Dr. Lobb. CYF also introduced a several documentary exhibits into evidence, including the court records from the Children's dependency proceedings and copies of Dr. Lobb's reports. Parents were each represented by separate attorneys and appeared in court for the second hearing day, wherein Father testified. Mother did not testify on her own behalf.

On September 3, 2025, the orphans' court filed orders that granted the Agency's petitions and involuntarily terminated Parents' parental rights to the Children pursuant to § 2511(a)(2), (5), (8), and (b). On September 29, 2025, Father timely filed separate notices of appeal along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On October 3, 2025, Mother timely filed separate notices of appeal and Rule 1925(a)(2)(i) and (b) concise statements. In their respective concise statements, Parents asserted allegations of error that only challenged the orphans' court's conclusions pursuant to § 2511(b). On October 28, 2025, the orphans' court filed a thorough Rule 1925(a)(2)(ii) opinion that collectively addressed Parents' arguments.

---

[5] Mother gave birth to a son in August 2025. *See* N.T., 8/28/25, at 39-40. Testimony adduced during the termination proceedings indicated that Mother attempted, unsuccessfully, to hide the pregnancy from CYF. *See id*. at 27.

In this Court, Parents have each presented a single issue for our consideration, which jointly challenge the evidentiary support underlying the orphans' court's findings pursuant to § 2511(b) of the Adoption Act ("the Act").[6]  **See** Mother's brief at 8 ("Did the [orphans'] court abuse its discretion and/or err as a matter of law in finding [that] termination of Mother's parental rights would best serve the needs and welfare of [the Children] pursuant to [§] 2511(b) . . . ?"); Father's brief at 8 (same).

Our basic standard of review in this context is well-established:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence.  When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record.  Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.
>
> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result.  Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.
>
> In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support.  Termination of parental rights has significant and

_____

[6]   Attorney Spurr has filed briefs in this Court on behalf of the Children advocating for reversal.  We address the Children's position further *infra*.

permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa.Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by § 2511 of the Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id*. at 830; *see also* 23 Pa.C.S. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to § 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). This Court need only agree with the orphans' court's determination as to any one subsection of § 2511(a), in addition to § 2511(b), in order to affirm in this particular context. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

As noted above, Parents have declined to challenge the orphans' court's conclusion that involuntary termination of Parents' rights was warranted pursuant to § 2511(a)(2), (5), and (8). Accordingly, we will proceed to consider their arguments pursuant to § 2511(b), which provides, as follows:

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights

- 9 -

of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b). Our Supreme Court has explained that the "plain language" of § 2511(b) "clearly mandates" that the orphans' court "focus on the child and consider all three categories of needs and welfare." **Interest of K.T.**, 296 A.3d 1085, 1105 (Pa. 2023). In undertaking this inquiry, "courts should consider the matter from the child's perspective," placing the child's needs and welfare above concerns for the parent. **Id**. Furthermore, the orphans' court's determination pursuant to § 2511(b) must be rendered on a case-by-case basis and in the individual light of each child's specific needs and particular circumstances. **See id**. at 1105-06 (citing **In re Adoption of L.A.K.**, 265 A.3d 580, 593 (Pa. 2021)).

To that end, our Supreme Court has identified several specific aspects of the child's welfare that the orphans' court must always consider in this context. **See id**. at 1106. Specifically, the court must consider: (1) the nature and extent of the child's "bond with the biological parent;" (2) whether the child is "in a pre-adoptive home and whether they have a bond with their foster parents;" and (3) intangibles such as love, comfort, security, stability, and permanency. **Id.** at 1106, 1109. These factors are each of "primary importance" in the context of § 2511(b). **Id**. at 1109. In addition to these

- 10 -

mandatory factors, a court may also "properly consider the effect of the parent's conduct upon the child and consider 'whether a parent is capable of providing for a child's safety and security or whether such needs can be better met by terminating a parent's parental rights.'" *M.E.*, 283 A.3d at 837 (quoting *Interest of L.W.*, 267 A.3d 517, 524 (Pa.Super. 2021)).

Where a parental bond is found to exist, the orphans' court "must examine whether termination of parental rights will destroy a 'necessary and beneficial relationship,' thereby causing a child to suffer 'extreme emotional consequences.'" *M.E.*, 283 A.3d at 837 (quoting *In re E.M.*, 620 A.2d 481, 484-85 (Pa. 1993)). A "necessary and beneficial bond" is one that "serves the child's developmental, physical, and emotional needs and welfare." *K.T.*, 296 A.3d at 1109. "Extreme emotional consequences" means "irreparable harm," which exceeds an "adverse or detrimental impact[.]" *Id*. at 1110-11. Our Supreme Court has summarized these considerations as follows:

> [A]n emotional bond with a parent is legally insufficient to preclude termination of parental rights without determining whether such bond is necessary and beneficial to the child and weighing the other factors present in the record. Likewise, an adverse effect or detrimental impact of severance alone cannot demonstrate a necessary and beneficial bond.

*Id*. at 1114 (cleaned up). Moreover, "although the parental bond is a major aspect of the [§] 2511(b) analysis, **it is nonetheless only one of many factors to be considered by the court**[.]" *Id*. at 1109 (emphasis added).

With these legal principles in mind, we turn to Parents' arguments. Father avers that "[t]he record affirmatively demonstrates that Father shares

- 11 -

a meaningful, beneficial bond with [the Children.]"  Father's brief at 15.

Mother similarly asserts: "There was substantial evidence to demonstrate the

[Children] have a beneficial and necessary relationship with Mother."  Mother's

brief at 15.  Thus, Parents submit that the orphans' court's § 2511(b) analysis

failed to appropriately consider Parents' bond with the Children and the

potential for harm if that bond was severed.  *See id*. at 21 ("The record clearly

established that [the Children] will suffer if Mother's rights are terminated.");

*see also* Father's brief at 21 ("Here, the uncontroverted record demonstrates

that the [C]hildren have a meaningful and secure attachment to [Parents],

consistently express a desire to live with or maintain a relationship with them,

and that termination would likely cause emotional harm.").  For the following

reasons, we disagree.

In its Rule 1925(a)(2)(ii) opinion, the orphans' court concluded that CYF

"clearly and convincingly" proved that "terminating [P]arents' rights was in

the best interests of [the Children], that neither [G.H. or L.H.] would suffer

extreme, unrepairable harm from termination nor did the [C]hildren have a

necessary and beneficial relationship with [Parents], and that termination best

served the [C]hildren's developmental, physical, and emotional needs."

Orphans' Court Opinion, 10/28/25, at 18.  While acknowledging that a bond

exists between Parents and the Children, the court found this bond was not

necessary or beneficial, based largely upon Parents' ongoing struggles with

narcotics.  *See id*. at 38 ("[Parents'] actions, largely dictated and impacted

by the disease of addiction, rendered themselves no longer necessary or beneficial to [G.H. or L.H.]"). The court emphasized that Parents had failed to make any substantive progress with respect to their permanency goals, explaining: "These were critically important goals that would allow [Parents] to be in a position where they could meet the developmental, physical, and emotional needs of [the Children.]" *Id*. at 19. Overall, the orphans' court's concluded, as follows:

> [Parents] expressed feelings of love and affection towards [the Children], and the court did find their sentiments credible. However, the totality of the evidence and testimony presented, along with [the orphans' court's] first[-]hand observations and credibility determinations, overwhelming[ly] supported the conclusions that the [C]hildren would not suffer serious emotional harm if parental rights were terminat[ed], the [C]hildren were bonded and securely attached to their current caregivers, the foster home was best meeting their developmental, physical, and emotional needs in a way that [Parents] did not or could not provide, and that the [C]hildren's relationship with their parents was no longer necessary and beneficial.

*Id*. at 37. The court also "emphasized the safety needs and intangibles of [the Children] in this analysis," including "love, comfort, and stability." *Id*. at 30. In rendering these findings, the court specifically found the testimony of Dr. Lobb, Ms. Breighner, and Ms. Conti to be credible. *Id*. at 38.

Contrary to Parent's arguments, our review indicates that the orphans' court's conclusions pursuant to § 2511(b) are amply supported by the certified record. In their respective testimonies, Dr. Lobb, Ms. Breighner, and Ms. Conti each acknowledged that a bond exists between Parents and the Children. ***See***

N.T., 8/28/25, at 23, 30, 50; N.T., 9/2/25, at 70. They were also unanimous, however, in noting that this bond was not necessary or beneficial.

Based upon her observations during approximately thirty supervised visits, Ms. Breighner averred that the bond between Parents and the Children was "not a secure bond or attachment," but one which produced "a lot of anxious behavior from the [C]hildren[.]" N.T., 8/28/25, at 50. When interacting with Parents, Ms. Breighner observed that the Children "appear very dysregulated and escalated." *Id*. at 51. These behaviors, however, were not present when the Children interacted with Foster Parents. *See id*. Dr. Lobb further explained that while there was "the possibility of some detriment" due to the termination of Parents' rights, he believed any negative consequences would "be overcome by the relationship that [the Children] have with [Foster Parents] and the stability that they have there." N.T., 9/2/25, at 74. He determined the Children were "securely attached" to Foster Parents, who he also identified as "an appropriate adoptive resource." *Id*. at 73. Ms. Breighner further confirmed the existence of a bond between the Children and Foster Parents, testifying that the Children were particularly closely bonded with Foster Mother. She explained,

> [t]hey seek out affection from [her]. When I'm there for home visits, they repeatedly come into the room and ask for hugs. Often times it is hard to have a conversation, because they are coming in seeking out affection. [Foster Mother] reciprocates that affection. The girls appear very comfortable with her.

N.T., 8/28/25, at 51. Finally, Ms. Conti averred that the Agency believed that Foster Parents were "very much" meeting the Children's "educational, psychological and developmental needs." *Id*. at 19.

The witness's conclusions were also largely predicated upon Parents' lack of progress with respect to their dependency objectives, which had significant and negative impacts upon the Children's permanency and the critical "intangibles" of security, stability, and permanency that were emphasized by the orphans' court. Ms. Conti explained that "the Agency believes the Children deserve permanency," which Parents could not offer since "the issues that brought the family to the attention [of the Agency] have not been rectified." N.T., 8/28/25, at 38. Dr. Lobb similarly opined that the Children's "need of permanency" outweighed any potential detriment that might result from the severing of Parents' parental rights. N.T., 9/2/25, at 75. Finally, Ms. Breighner expressed her concern that Parents were continuing to struggle with substance abuse by detailing several incidents that occurred between June 2025 and August 2025, wherein Parents appeared to be under the influence of narcotics during visits with the Children. *See id*. at 47-49.

Based upon the foregoing, we observe no abuse of discretion or error of law in the orphans' court's conclusions pursuant to § 2511(b). Contrary to Parents' arguments, the certified record fully supports these findings.

We acknowledge that the Children in this case are opposed to termination and have argued in favor of reversing the orders involuntarily

terminating Parent's parental rights. Their arguments, however, are essentially the same as Parents' arguments, *i.e.*, that the orphans' court's findings were not supported by competent evidence. *See* Children's brief (Father's cases) at 8 (contesting that CYF "presented proof at trial of grounds for the termination of [Father's] parental rights by clear and convincing evidence"); Children's brief (Mother's cases) at 9 (same).

There is no dispute that the Children have expressed their desire to be reunited with Parents. We emphasize, however, that "courts correctly refine their focus on the child's development and mental and emotional health rather than considering only the child's 'feelings' or 'affection' for the parent, which even badly abused and neglected children will retain." *K.T.*, 296 A.3d at 1111 (cleaned up). We previously expounded upon this point thusly:

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and its mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (cleaned up).

The Children's preference is not dispositive. Instantly, the orphans' court considered the pertinent need-and-welfare factors to be assessed pursuant to

***Interest of K.T.***, 296 A.3d at 1105, and the certified record supports its conclusion that the benefits of moving the Children toward a permanent home with Foster Mother offsets their desire to maintain their connection with Parents. Thus, mindful of our deferential standard of review, we discern no abuse of discretion in the court's conclusion that terminating parental rights serves the Children's needs and welfare by allowing them to achieve permanency with Foster Mother. Accordingly, we affirm the orders terminating Parents' parental rights.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/13/2026